## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| | ) 2:18-cv-695 |
| v. | ) ) |
| SAM S. SUPPA, | ) ) |
| Defendant. | ) ) |

### OPINION

**Mark R. Hornak, Chief United States District Judge**

Student loans are a burdensome reality confronting millions of Americans. Leaving college is often accompanied by monthly payment notices and compounding interest. Left unattended, loans that start small slowly expand. While different circumstances require different repayment strategies, the strategy of doing nothing—ignoring bills, defaulting—is no strategy at all.

Defendant Sam Suppa obtained three (3) relatively small student loans in the late 1980s to attend college at California University of Pennsylvania. After he left the university, Suppa quickly defaulted on all three (3) loans—having made no payments at all on two (2) them. Through a reinsurance agreement with the original loan providers, the United States Department of Education now holds the title to Suppa's defaulted loans. The United States commenced this action, and now seeks summary judgment, to collect on Suppa's longstanding debts. In response, Suppa failed to raise any genuine issue of material fact. But the calculations provided by the United States in its motion and concise statement of facts in support of its request for a money judgment are inconsistent with the calculations included in its supporting affidavit. So its Motion for Summary Judgment (ECF No. 29) is **GRANTED** as to Suppa's liability but **DENIED WITHOUT PREJUDICE** as to the judgment amount, with the United States permitted to file an amended

motion and affidavit proving the requested judgment amount.

## I. PROCEDURAL HISTORY

The United States filed its Complaint against Suppa in May 2018, seeking a judgment in the amount of Suppa's defaulted loans.[1] (Compl., ECF No. 1.) After several extensions of time to allow for service by the United States, Suppa filed an Answer generally denying the allegations against him. (Answer, ECF No. 14.) Later Suppa filed a motion to dismiss—though based on the sequence of its filing, the Court construed Suppa's motion as requesting a judgment on the pleadings—in which he voiced skepticism that the United States could prove that he obtained the loans referenced in the Complaint. (ECF No. 25.) The Court denied Suppa's motion based on the Complaint's facial viability. (ECF No. 27.) A few weeks later, the United States filed the present Motion for Summary Judgment. (ECF No. 29.) Suppa then responded in opposition. (ECF No. 32.) With that, the United States' motion is ripe for disposition.

## II. STATEMENT OF THE FACTS

The United States' Complaint seeks to recover on three (3) separate loans Suppa received to attend California University of Pennsylvania—the first loan obtained in 1987, the second in 1988, and the third in 1989. (ECF No. 1.) Suppa defaulted on all three (3) loans in the early 1990s. (Pl.'s Concise Statement of Material Facts, ECF No. 31, at ¶¶ 7, 10.) In support of its summary judgment motion, the United States provided an affidavit from Christopher Bolander, a loan analyst for the U.S. Department of Education. (ECF No. 31-1, at 1–5.) The Bolander affidavit includes the United States' interest calculations for Suppa's loans. (*Id.*) In addition, the United States submitted copies of Suppa's applications for two (2) of the loans at issue and the promissory note for Suppa's third loan. (ECF No. 31-1, at 6–11.) And the United States provided requests for

---

[1] The Court has subject matter jurisdiction over this case because the United States is the plaintiff in this action. *See* 28 U.S.C. § 1345.

admission that Suppa failed to answer, so they have become admitted facts. (ECF No. 31-2, at 1–4.)

Following the path taken by the United States in its' motion, the Court will address the 1987 and 1988 loans separate from the 1989 loan. (ECF Nos. 29–31.) The Court will then turn to Suppa's response in opposition to the United States' motion. (ECF No. 32.)

A. **Suppa's 1987 and 1988 Loans**

In July 1987, Suppa applied for a $2,500 loan from First Federal Savings & Loan Corporation of Monessen. On or about August 19, 1987, he obtained a $2,500 loan from First Federal Savings & Loan Corporation ("1987 loan"). (ECF No. 31, at ¶ 1; Req. for Admis., ECF No. 31-2, at 3.)[2] Suppa used the 1987 loan to attend California University of Pennsylvania. This loan was guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA") and reinsured by the U.S. Department of Education ("DOE"). (ECF No. 31, at ¶ 2.)

In June 1988, Suppa requested another $2,500 loan from First Federal Savings & Loan Corporation. On or about August 19, 1988, he obtained a $1,584 loan from First Federal Savings & Loan Corporation of Monessen ("1988 loan'). (*Id.* at ¶ 3; ECF No. 31-2, at 3.) As he had with the 1987 loan, Suppa used the 1988 loan to attend California University of Pennsylvania as an undergraduate student. And the 1988 loan was similarly guaranteed by PHEAA and reinsured by DOE. (ECF No. 31, at ¶ 4.)

In August 1992, Suppa defaulted under the 1987 and 1988 loans without making any payments toward those debts. The holder of the 1987 and 1988 loans filed a claim on the loans against PHEAA, which paid the claim in the amount of $4,340.17. (*Id.* at ¶ 7.) DOE then

---

[2] During discovery, the United States served Suppa with a set of requests for admission under Federal Rule of Civil Procedure 36. (ECF Nos. 31-2; 31-3; 31-4.) Suppa never responded. Accordingly, the contents of the United States' requests for admissions are deemed admitted. Fed. R. Civ. P. 36(a)(3).

3

reimbursed PHEAA for the full $4,340.17 under their reinsurance agreement. Following the reimbursement, PHEAA assigned its right and title to the loans to DOE. (*Id.* at ¶ 8.)

### B. Suppa's 1989 Loan

Suppa obtained a third loan for $2,000 from Higher Education Loan Plan by executing a Promissory Note on or about October 16, 1989 ("1989 loan"). (ECF No. 31, at ¶ 5; ECF No. 31-2, at 4.) As with the 1987 and 1988 loans, Suppa used the 1989 loan to attend college at California University of Pennsylvania. The 1989 loan was guaranteed by PHEAA and reinsured by DOE. (ECF No. 31, at ¶ 6.)

In January 1991, Suppa defaulted under the 1989 loan with $666.00 credited toward the loan's principal balance. The holder of the 1989 loan filed a claim on the loan against PHEAA, which the agency paid in the amount of $1,448.59. (*Id.* at ¶ 10.) DOE then reimbursed PHEAA the full $1,448.59 under their reinsurance agreement. Having received reimbursement, PHEAA assigned its right and title to the 1989 loan to DOE. (*Id.* at ¶ 11.)

### C. Suppa's Response

Suppa responded to the United States' summary judgment motion with a two-page letter that did not include any exhibits. (ECF No. 32.) In his response, Suppa stated that he "opposes this Motion for summary judgment." (*Id.*) Suppa went on to write that he remembers "taking out a loan for $2500 to attend school at California University of PA in 1988, and another for maybe $1500 or $2000." (*Id.*) He then stated: "[a]t least part of this loan had been paid back to the local ranch of the bank, but I do not retain records of any transactions." (*Id.*) While Suppa states that his "elderly mother said she may be able to find something regarding payments made . . . she would have to try to dig through 32 year old paperwork while being the sole caretaker to [Suppa's] enfeebled father." (*Id.*)

Suppa then stated that he was unable to "obtain any repayment information from the bank [because] they had changed ownership, and no records were available." (*Id.*) And Suppa further claimed that he was unable to obtain information from DOE, who he says referred him to the Department of Justice, who referred him to the private law firm contracted to handle this case on behalf of the United States. (*Id.*)

Finally, Suppa noted that he does "not own a house, or any property, stocks, 401K or other retirement plan, life insurance, or anything else of value." (*Id.*) As such, he claims that "[i]t is unfair to have not allowed [him] to make an alternate resolution such as one of the FEEL programs for whatever unpaid balance there might be, rather than to come after [him] with a lawsuit after 32 years and demand $14,200." (*Id.*) Suppa's proposed plan: "a resolution that would be fair to BOTH parties." (*Id.*) As will be seen below, even if Suppa's unverified explanations are treated as being true, they do not create a genuine issue of fact as to anything material to the United States' motion.

### III.    LEGAL STANDARD

The Court will grant summary judgment when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a summary judgment motion, a disputed issue of fact must be both genuine and material— one upon which a reasonable factfinder could base a verdict for the non-moving party and that is essential to establishing the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Evidence submitted with a motion for summary judgment must be reducible to admissible evidence at trial." *Agrizap, Inc. v. Woodstream Corp.*, 450 F. Supp. 2d 562, 567 (E.D. Pa. 2006) (citing *Williams v. Borough of W. Chester*, 891 F. 2d 458, 465 n.12 (3d Cir. 1989)). The Court may rely on an affidavit to decide a motion for summary judgment only to the extent that the affidavit includes evidence that is at least potentially admissible at trial. *See Hurd v. Williams*, 755

F.2d 306, 308 (3d Cir. 1985) In addition, "[m]atters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' under Federal Rule of Civil Procedure 36(b), and may support a summary judgment motion." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) (footnotes omitted). When deciding a motion for summary judgment, the Court may not weigh the evidence or make credibility determinations. *Liberty Lobby, Inc.*, 477 U.S. at 248.

If the moving party carries its initial burden, then the non-movant must point to "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party cannot simply rest on allegations made in the pleadings in order to withstand summary judgment. *Id.* Instead, the non-moving party must respond by identifying "sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998). Arguments made in the parties' briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

### IV. DISCUSSION

The United States' motion and its accompanying evidence establishes its right to collect on Suppa's defaulted loans. And nothing in Suppa's sparse response identifies a genuine dispute of material fact—if anything, part of Suppa's response affirmatively agrees with the United States' concise statement of facts. As a result, the Court will grant summary judgment for the United States on the issue of liability. But because the United States' calculation of the amount Suppa

6

owes as presented in its moving papers is internally inconsistent, the United States will need to file an amended motion and supporting documentation as to the calculation of Suppa's unpaid debts.

### A. Suppa's Liability

To recover on a promissory note for a defaulted student loan, the United States must show: (1) the defendant obtained the loans at issue; (2) the United States has the present right to sue for the principal and interest on the loan; and (3) the loan is in default. *See United States v. Hargrove*, No. 06-cv-1059, 2007 WL 2811832, at *2 (W.D. Pa. Sept. 24, 2007). The United States easily checks all three (3) boxes for Suppa's defaulted loans. And Suppa's failure to respond to the United States' requests for admission conclusively establishes much of the United States' case against him.[3] *See Kwasny*, 853 F.3d at 91.

For the 1987 loan, through his non-response to the request for admission, Suppa admitted: (1) he signed the application for the 1987 loan; (2) First Federal Savings & Loan disbursed $2,500 to him in August 1987; and (3) he failed to repay the principal and interest on that loan. (ECF No. 31-2, at 3.) And the Bolander Affidavit establishes the United States' current right to sue on the unpaid 1987 loan through the reinsurance agreement with PHEAA, as well as the fact that Suppa defaulted on the 1987 loan.[4] (ECF No. 31-1, at 1–4.)

The same can be said for the 1988 loan. Suppa's admissions establish: (1) he signed the application for the 1988 loan; (2) First Federal Savings & Loan disbursed $1,584 to him in

---

[3] If offered by the United States against Suppa at trial, those admissions would be statements by an opposing party, and therefore not hearsay. *See* Fed. R. Evid. 801(d)(2).

[4] The Court may consider the Bolander Affidavit because the information contained therein would be admissible if testified to at trial by a DOE custodian such as Mr. Bolander. *Accord United States v. Rothman*, No. 15-cv-07311, 2016 WL 7655747, at *1 (C.D. Cal. June 28, 2016) ("Phillipe Guillon, a Senior Loan Analyst at the Department of Education and a custodian of records pertaining to the subject loans, testifies that (1) Plaintiff obtained the loans in 1979 and 1981; (2) Plaintiff defaulted on the loans in 1985; and (3) the government was assigned the right to seek the principle and interest due under the terms of the loans"). The underlying documents attached to the Bolander Affidavit would themselves to admissible under the business records exception, Fed. R. Evid. 803(6)(B), or as statements by an opposing party. Fed. R. Evid. 801(d)(2).

September 1988; and (3) Suppa failed to repay the principal and interest on the 1988 loan. (ECF No. 31-2, at 3.) And the Bolander Affidavit similarly establishes the United States' current title to the 1988 loan and the fact that Suppa defaulted on the 1988 loan. (ECF No. 31-1, at 1–4.)

Finally, as to the 1989 loan, Suppa's failure to respond to the requests for admission conclusively admit: (1) he signed the promissory note for the 1989 loan; (2) Higher Education Loan Plan distributed $2,000 to him on that loan; and (3) he failed to repay all of the principal and interest. (ECF No. 31-2, at 3–4.) The United States also attached the promissory note that Suppa signed for the 1989 loan. (ECF No. 31-1, at 10–11.) And the Bolander Affidavit establishes the United States' current right to sue on the 1989 loan, as well as the fact that Suppa defaulted on that loan. (ECF No. 31-1, at 1–4.)

Suppa's response does not affirmatively contradict the United States' case on liability. While Suppa states that he does not recall the exact specifications of the loans he took, he does not argue that the United States is wrong on the facts that (1) he received the 1987, 1988, and 1989 loan; (2) those loans have since been assigned to the United States; or (3) he defaulted on all of the loans at issue. (ECF No. 32.) The fact that Suppa himself did not retain (or is unable to find) records of the loan transactions does not create a genuine dispute of material fact on his liability for those loans. Nor does Suppa's argument that he has little to no assets currently. So nothing in Suppa's response negates the force of the admissible evidence put forward by the United States in support of its summary judgment motion.

In sum, the United States provided sufficient evidence that Suppa is liable to it for the amount of the defaulted 1987, 1988, and 1989 loans; Suppa has not created any genuine issue of material fact; and the United States is therefore entitled to judgment in its favor as a matter of law. As a result, the Court will enter summary judgment on the issue of liability against Suppa.

B. **Judgment Calculation**

While the Court can grant summary judgment on the issue of liability, it is unable to determine the amount of that judgment based on the current filings. In its motion, the United States seeks a total of $14,208.90, with interest accruing at $1.27 per day from January 15, 2020. (ECF No. 29.) But for all three (3) loans, the United States' motion for summary judgment, concise statement of facts, and the Bolander Affidavit are materially inconsistent with one another when it comes to the amount Suppa owes on his defaulted loans.

For the 1987 and 1988 loans, the United States' concise statement of facts claims that as of January 15, 2020, Suppa owes principal in the amount of $4,340.17, and interest in the amount of $5,795.10, for a total of $10,135.27. (ECF No. 31, at ¶ 9.) The United States cites to paragraph thirteen (13) of the Bolander Affidavit for that calculation. (*Id.*) But that portion of the Bolander Affidavit states that, for the 1987 and 1988 loans, as of January 24, 2020, Suppa owes $4,340.17 in principal and $7,562.45 in interest, for a total of $11,902.62. (ECF No. 31-1, at 3.) Both the concise statement of facts and the Bolander Affidavit state that interest on the 1987 and 1988 loans accrues at $0.95 per day. So there are two (2) meaningful internal contradictions in the United States' filings: First, whether the calculation is as of January 15, 2020, or whether it is as of January 24, 2020. That is the minor difference. The second, more major inconsistency, is that the concise statement of facts says Suppa owes $5,795.10 in interest, whereas the Bolander Affidavit says Suppa owes $7,562.45 in interest on the same loans. So the Court cannot tell from the face of the United States' filings what amount Suppa actually owes in interest on the 1987 and 1988 loans.

As for the 1989 loan, the United States' filings are again internally inconsistent—though to a more minor degree than the inconsistency surrounding the 1987 and 1988 loan calculations. The United States' concise statement of facts states that, as of January 15, 2020, Suppa owes a

total of $4,073.63 for the 1989 loan—$1,448.59 in principal and $2,625.04 in interest. (ECF No. 31, at 3.) Meanwhile, the Bolander Affidavit states that, as of January 15, 2020 (the same date used in the concise statement of facts), Suppa owes a total of $4,076.26 on the 1989 loan—$1,448.59 in principal and $2,627.67 in interest. (ECF No. 31-1, at 4.) Both filings state that interest on the 1989 loan principal amount accrues at the rate of $0.32 per day. (ECF No. 31, at 3; ECF No. 31-1, at 4.) Yes, this is only a $3 difference. But while the United States is entitled to a judgment in the full amount Suppa owes, it is not entitled to a dollar more. So even a minor inconsistency in the calculation prevents the Court from approving the judgment amount the United States requested in its motion.

      The United States is, however, permitted to refile the portion of its motion regarding the calculation of Suppa's debt on the 1987, 1988, and 1989 loans. When it submits the amended filing, the United States should also submit an amended and up-to-date affidavit from an appropriate official at the Department of Education.

## V. CONCLUSION

In sum, the United States is entitled to judgment as a matter of law and Suppa failed to raise any genuine disputed issue of material fact on the issue of liability. But the United States' filings on the issue of the judgment amount are currently insufficient. So the United States' Motion for Summary Judgment (ECF No. 29) is **GRANTED** as to Suppa's liability but **DENIED WITHOUT PREJUDICE** as to the judgment amount, with the United States permitted to file an amended motion and affidavit proving the judgment amount within fourteen (14) days of the date of the Court's Order granting its motion as to liability. Suppa may file a response within fourteen (14) days of any such filing by the United States.

An appropriate Order will follow.

/s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: June 4, 2020
cc:    All counsel of record
        Defendant via Certified U.S. Mail